WHITE, RESPONDENT, v. KAMPS, APPELLANT.

No. 8638

Submitted May 21, 1946. Decided June 28, 1946.

171 Pac. (2d) 343

Mr. E. P. Bunker, of Bozeman, for appellant.

Mr. George Y. Patten, of Bozeman, for respondent.

MR. JUSTICE CHEADLE delivered the opinion of the Court.

Appeal from a decree adjudging that the defendant has no right or easement to travel upon or across plaintiff's land; that there is no public road established across said land; and

restraining defendant from asserting any such right or easement and from entering upon or traveling over or across the land involved.

Summarized, the complaint alleges ownership by plaintiff of the north half of section 36, township 1 south of range 3 east, in Gallatin county, and ownership by defendant of the southeast quarter of section 25, which adjoins plaintiff's land on the south and southwest; that at various times during 1943 the defendant, in travelling to and from his said lands, wrongfully, willfully and unlawfully, and without right, entered upon and travelled across plaintiff's lands, with automobiles, trucks and other vehicles, thereby trespassing upon said lands, and broke down, injured and destroyed plaintiff's grain and grass. It further alleges that defendant wrongfully and unjustly claims and asserts a right of way or easement to travel across plaintiff's lands wherever he chooses, which claim is entirely without right.

By his amended answer the defendant in effect alleges that he did travel over and across plaintiff's lands, in accordance with his certain definite and known rights to do so. By way of a cross-complaint defendant alleges that he and his predecessors in interest have for more than 20 years held, had and owned an easement over and across plaintiff's land, consisting of a roadway 20 feet wide, along a described centerline, which roadway or easement has been owned, claimed and held against all persons openly, notoriously and continuously; that plaintiff wrongfully and unjustly denies defendant's right to drive and travel across this land, to and from the county highway.

A second cross-complaint alleges that the defendant and his predecessors in interest and the general public have for more than 20 years, openly, notoriously and continuously held, had and owned an easement over, on and across plaintiff's land, being a roadway about 20 feet in width along a centerline as described in the first cross-complaint; that the plaintiff wrongfully and unjustly denies the right of defendant and the general public to drive and travel across plaintiff's land, to and

from the county highway shown on the map attached as Exhibit A. The relief demanded by the defendant is a decree that the defendant and his successors in interest and the general public have an easement, right of way or roadway across plaintiff's lands.

By reply, plaintiff admits that the defendant and his predecessors in interest have at times travelled over and across the lands in question, with various kinds of vehicles, but denies that such travel has been in accordance with a certain, definite or known right, or any right whatever, and have at all times been without right to do so; admits there is a farm road on plaintiff's lands extending from a point near the buildings thereon to about 150 feet beyond the point where the Green Lateral of the High Line Canal crosses said road, from which point the plaintiff, his tenant or agents travel to various parts of plaintiff's lands in connection with working the farm. Plaintiff further denies that the general public have for more than 20 years, or ever, or at all, openly, notoriously, continuously, or otherwise, held, had or owned an easement over or across his lands on a roadway 20 feet wide, as described in the answer, or elsewhere, or at all; denies that a public road has ever been established, or travelled, or has ever existed.

The cause was tried by the court, without a jury, and after submission the court made 20 findings of fact, the pertinent parts of which may be summarized as follows:

Findings I-IV: That plaintiff and defendant are the owners and in possession of the respective lands described in the complaint; that defendant claims a right of way or easement to drive or pass over and to travel to and from his lands across lands belonging to the plaintiff; that the defendant threatens to and unless restrained by the court, will, continue to enter and trespass upon the lands of the plaintiff and travel across the same with automobiles and other vehicles, and break down, injure and destroy the grain and grass growing thereon and interfere with the use and enjoyment by the plaintiff of his lands

106

Findings V-IX: That the road claimed by defendant enters plaintiff's land on the county road known as the Godfrey Canyon road, extending thence in a generally easterly and northeasterly direction through plaintiff's lands and to and upon defendant's lands; that from the Godfrey Canyon road, the road claimed by defendant passes by the buildings on plaintiff's land and extends along lands not cultivated or used for farming, over rough land, through a draw or ravine, and along a side hill to the point where the same is crossed by the Green Lateral from the High Line Canal, and that that part of the road is the establilshed road maintained and used regularly by plaintiff and his predecessors in interest in passing to and from the cultivated portions of plaintiff's farm, and is the plaintiff's principal road for use in his farming operations; that between the crossing of the Green Lateral and a small ditch on plaintiff's land north thereof, there is located the granary of the plaintiff and an open space where plaintiff's farm machinery is left at times when not in use, and from the crossing of said small ditch north of the Green Lateral and thence to the north line of plaintiff's lands, the road claimed by defendant passes over land cultivated and farmed by plaintiff; that there was formerly a fence on the east side of said road, used to divide plaintiff's land for purposes of pasturage, which was removed as early as 1929; that to the west of said road claimed by defendant, plaintiff has plowed each year, when the land has been in crop, a ditch for use in irrigating, but which ditch has been plowed up each year when the use thereof for that year has ended; that the road claimed by defendant from the said small ditch to the north line of plaintiff's lands has never been a graded road, but has consisted of a trail during such times as it has been travelled over, and the said road was plowed up first about 1930, and once between 1930 and 1941, and in 1941 and continuously thereafter, and planted in crops.

Findings X-XIV: That in 1911, one James Veltkamp entered into possession of the north half of section 36 which was

conveyed to him by patent from the state of Montana in July, 1915, and was in possession of said land from 1911 to his death in January, 1920; that the said James Veltkamp also became the owner of the southeast quarter of section 25 in April, 1912, and continued in ownership thereof until December 1, 1918, when he conveyed the same to his son John Veltkamp, who from 1914 until December 1, 1918, occupied the same as a tenant of James Veltkamp. John Veltkamp continued in the possession thereof from December 1, 1918, to February 10, 1931, as the owner, on which last mentioned date he conveyed the same to one Krueger, but continued in the possession thereof at least until November, 1941, at which time or thereabouts the defendant became the owner of said land by conveyance from Krueger.

That James Veltkamp died testate in January, 1920, and that in the process of the probate of his estate the administrator with the will annexed, on June 21, 1932, pursuant to order of the court, by administrator's deed conveyed the north half of section 36 to plaintiff who has ever since been the owner and in possession thereof; that during the period between January 26, 1920, and June 21, 1932, John Veltkamp was an owner as a tenant in common with the other devisees of James Veltkamp, deceased, of this land; that while James Veltkamp owned both the said tracts of land and also during the time that John Veltkamp lived upon the land now owned by defendant, and during the time his father James Veltkamp and his devisees owned the land now owned by the plaintiff, the said John Veltkamp maintained his mail box on the Godfrey Canyon road near his father's home; that during the time his father owned what is now the defendant's land and prior to the purchase thereof by John Veltkamp, the latter farmed or assisted in farming said land; during the times mentioned the said John Veltkamp travelled back and forth over said road as a matter of convenience in passing back and forth between his home and his father's home and in going to his mail box on the Godfrey Canyon road and to said county road; that such use of the said road by John Veltkamp was permissive until 1941, and

that he never at any time prior to 1941 claimed the use thereof adversely or in hostility to the ownership thereof by James Veltkamp, or his devisees and successors in interest.

Findings XV-XX: That plaintiff acquired the land now owned by him above described on June 21, 1932, and since that time John Veltkamp and the defendant and his son have at times passed over the said road now claimed by the defendant. In about the month of August, 1941, the plaintiff and his tenant notified John Veltkamp, then the tenant upon what is now the defendant's land, that plaintiff was going to close said road; that thereafter during said season when one Henry Vander Ark, an agent or employee of the defendant, was about to drive a threshing outfit across plaintiff's land from defendant's land, John Veltkamp instructed him not to pass over said road from the north line of defendant's land south to the Green Lateral, which then had on it a growing crop, and that accordingly the said Vander Ark moved the threshing outfit across plaintiff's lands east of said portion of said road where no growing crop would be interfered with.

That the defendant and his predecessors in interest have at all times prior to 1941 used the said road permissively, and none of them has ever claimed prior to 1941 the said road or any part thereof adversely to the plaintiff or his predecessors in interest; that the said John Veltkamp, while passing over said road and in order to continue thereon would at various times fill holes caused by wash-outs in said road but these repairs were necessary for his immediate passage; that he helped in the repair of a bridge across the Green Lateral at some time during the occupancy of the lands now owned by defendant, but none of such work was done by reason of a claim of right in said road; that at no time while John Veltkamp occupied the defendant's land as the owner thereof or as a tenant, or otherwise, nor until sometime in August, 1941, did John Veltkamp ever indicate to James Veltkamp or his successors in interest that he claimed a right in said road adversely to the owner of the land now owned by plaintiff.

That there was no such use of the said road across the north half of section 36 by the general public to constitute a public highway, nor did the county of Gallatin ever accept such road as a public highway.

Following are the pertinent conclusions of law:

(1) That the use of said road over and across the plaintiff's lands by the defendant and his predecessors in interest has at all times prior to 1941 been permissive, and not adverse, or under a claim of right for a period of ten years or any other period of time;

(2) That the defendant has not any right or easement to enter upon and travel upon or across the said lands of the plaintiff, or any part thereof. The proof fails to establish a public road or highway;

(3) That the plaintiff is entitled to an injunction enjoining and restraining the defendant, his tenants, servants, agents and employees from asserting any claim to a right or easement to enter upon and travel said road upon and across the lands of the plaintiff.

Decree was entered in accordance with the findings of fact and conclusions of law, forever restraining the defendant from asserting any claim to a right or easement to enter upon and travel upon and across the lands of plaintiff.

Error is assigned by the appellant for the following findings of fact:

(1) That the use of the road by John Veltkamp was permissive until 1941, and that he never prior to that year claimed the use thereof adversely or in hostility to the ownership by James Veltkamp or his devisees or their successors in interest;

(2) That about the month of August, 1941, plaintiff and his tenant notified John Veltkamp that plaintiff was going to close the road;

(3) That the defendant and his predecessor in interest at all times prior to 1941 used the road permissively and that none of them has ever claimed the road prior to 1941 adversely to plaintiff or his predecessors in interest;

(4) That none of the work done by the defendant or his predecessors was done by reason of a claim of right in said land;

(5) That at no time while he occupied said land as owner and tenant did John Veltkamp ever indicate to James Veltkamp or his successors in interest that he claimed a right adversely to the said owner.

Appellant also assigns error by the trial court in adopting the conclusions of law above set forth.

We think the pertinent facts developed at the trial are clearly summarized in the trial court's findings. That portion of the findings objected to by appellant, which points up the real question involved, might well have been excluded from the findings, since they are in reality conclusions of law and are repeated as such in the record. The ultimate conclusion that the defendant has no right or easement to enter upon or across plaintiff's lands is predicated and depends upon conclusion No. 1 as follows: "That the use of the said road over and across the plaintiff's lands by the defendant and his predecessors in interest has at all times prior to 1941 been permissive, and not adverse (ly), or under a claim of right, for a period of ten years, or any other period of time." If this conclusion is supported by the facts, we think the judgment is correct and must be affirmed. At the risk of repetition, these facts shall be reviewed.

James Veltkamp, the father of John Veltkamp, acquired the north half of section 36 in 1915 and the southeast quarter of section 25, adjoining on the west in 1912, the two places being farmed together. Both James and John Veltkamp lived on the west side of the land in section 36 until about 1918, in which year John Veltkamp purchased the southeast quarter of section 25 from his father, retaining it until 1931 in which year he deeded it to Louis and Albert Krueger in satisfaction of a mortgage of indebtedness. The land was conveyed to Ida Mae Krueger in 1933 and in 1941 conveyed by her to the appellant, John Kamps. John Veltkamp appears to have farmed the southeast quarter of section 25 from about 1912 until 1941.

From 1912 until 1918 he farmed it as a tenant of his father while living at his father's home; from 1918 to 1931 as owner; and from 1931 until 1941 as a tenant of the Kruegers.

At all of the times involved there has been a farm road on the north half of section 36, entering that land from Godfrey Canyon near the farm buildings, passing near the buildings and extending up a ravine and across the High Line Canal. This road has at all times been used by James Veltkamp and the respondent who acquired the land from Veltkamp's administrator in 1932, in their farming operations, it being used to reach the fields on this land. The record indicates that the respondent at all times since 1932 has maintained and repaired this road at his expense. Immediately beyond the crossing of the High Line Canal there is a small space upon which is situated respondent's granary and where respondent and his tenant park their machinery while engaged in farming. A short distance beyond the crossing of the High Line Canal the road crosses a shallow ditch with no bridge and from there it is merely a trail road which has been plowed up and farmed at different times during the past 20 years. This portion of the road followed the west side of a division fence and consisted only of a couple of wagon tracks which were not given any special maintenance by anyone. From the point where the road enters appellant's lands there is no definite or established road through that land.

At the time the present tenant, one Van Dyk, took possession of respondent's land in 1932, the fence existed across the east side of the road above the Canal crossing. Van Dyk testified that the fence was erected for the purpose of dividing the field for pasturage. The record also contains evidence of a ditch which extends along the west side of the road north from the canal crossing, which appellant contends was intended to drain the road. The tenant testified that this was not intended as a permanent ditch but as a lateral for spreading water and was plowed up each season.

It appears without contradiction that there are four gates through which it has at all times been necessary to pass in order

to cross appellant's land on this road, and there is evidence to show that these were kept closed, two of them at all times and the remaining two most of the time.

Since James Veltkamp owned both tracts of land until 1918, obviously there could have been no adverse use of this road prior to that year. From 1912 to 1918 John Veltkamp rented the land from his father and used the road in connection with his farming operations and also as a convenience in going to and from his mail box. After John Veltkamp purchased the southeast quarter of section 25 from his father in 1918, and until 1931, apparently the same arrangement continued between father and son, which permitted John Veltkamp to use the road in crossing his father's land. The evidence, we think, fails to establish a hostile or an adverse use during that period. From 1931 to 1941 John Veltkamp continued to farm the land in section 25 as a tenant of the Kruegers and there appears to be no evidence that any hostile or adverse right was claimed or obtained during that period. In 1932 after James Veltkamp's death, respondent acquired title to the land in section 36 by a deed from the administrator of James Veltkamp's estate. There is no evidence of any change in the character of the use of the road by John Veltkamp during the period of administration of his father's estate, or subsequent to the issuance of the administrator's deed to the respondent.

Appellant's claim of easement, of course, is based upon alleged adverse user. In order to sustain this contention it is necessary that he establish that his use was adverse and hostile to respondent's title. In price v. Western Life Insurance Co., 115 Mont. 509, 146 Pac. (2d) 165, 166, one of the more recent cases on this point decided by this court, it is said:

"The rule governing establishment of title to land by adverse possession is clearly established in this jurisdiction. Among the facts that one must establish in seeking to oust the title of another and establish his own, is hostile possession for the statutory period. The possession of the plaintiff is shown by the record to have been permissive, not hostile. We said in a recent

case: 'While permissive possession may subsequently become hostile (2 C. J. S. Adverse Possession, sec. 87, p. 639), to make it so there must be a repudiation of the permissive possession * * *, and the repudiation must be brought home to the owner by actual notice, * * *.' Kelly v. Grainey, 113 Mont. 520, 529, 129 Pac. (2d) 619, 624, and cases cited; see, also Ferguson v. Standley, 89 Mont. 489, 499, 300 Pac. 245, and cases there cited. Price's testimony relative to the trade arranged between him and Larsen does not indicate any hostility of any nature but, on the contrary, shows cordial, neighborly relations between them over a long period of years. So long as Larsen occupied his land there is nothing in the record to show that Price intended to invade Larsen's title, or to hold the land in hostility to Larsen, and the defendant was not advised of Price's claim for a long period of time after sheriff's deed was issued to the defendant. 'No matter in what jurisdiction the determination of what constitutes adverse possession may arise, the decisions and textbooks are unanimous in declaring that such possession among other things, must be hostile.' Houston Oil Co. of Texas v. Stepney, Tex. Civ. App., 187 S. W. 1078, 1084. Such is the general rule.

" 'Hostile' as used in the books in relation to the adverse possession of land does not mean, to use the language of distinguished counsel, that one 'must run off the legal owner from the land with a pitchfork,' but we think it necessarily must mean an invasion of the owner's possession by the claimant without the owner's permission and in violation of the owner's right of property. 'Adverse' means 'having opposing interests, having interests for the preservation of which opposition is essential.' Webster's New International Dictionary. When possession has been adverse for the statutory period, the law raises the presumption of a grant, but this presumption arises only when the occupation would otherwise have been unlawful. Tinkham v. Arnold [3 Me. 120], 3 Greenl., 120; Jackson ex dem. Ten Eyck v. Richards, 6 Cow., N. Y. 617; Hall v. Powel, 4 Serg. & R., Pa., 456, 8 Am. Dec. 722.

"During all the years Price and Larsen were neighbors, whatever the nature of the possession Price exercised over the Larsen land is shown by the record to have been a possession exercised in clear recognition of Larsen's title, and that such possession was permissive and not hostile. 'The possession * * * having begun as permissive holding, could never ripen into title by adverse possession until sufficient time had elapsed after actual (notice of) ouster * * *, and there was no proof of ouster.' McCutchen v. McCutchen, 77 S. C. 129, 57 S. E. 678, 679, 12 L. R. A., N. S., 1140.''

The rule is well established in this state that in order to be adverse, possession of realty must be actual, visible, exclusive, hostile and continuous, for the full period. Ferguson v. Standley, 89 Mont. 489, 300 Pac. 245.

In order to be adverse, the user must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land and such claim must be known to, and acquiesced in by, the owner of the servient tenement. 28 C. J. S., Easements, sec. 12, p. 647, section 14, p. 653.

The fact that a user is permissive in its inception does not in itself prevent it from subsequently becoming adverse and ripening into an easement by prescription. If a licensee renounces the authority under which he began the use and claims it as his own right, and that fact is brought to the knowledge of the licensor, after which the licensee continues the use under such adverse claim exclusively, continuously and uninterruptedly, for the full prescriptive period, the right will become absolute. Nevertheless, if a use begins as a permissive use it is presumed to continue as such, and in order to transform it into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, which must be brought to the attention of the owner, and the use continued for the full prescriptive period. 28 C. J. S., Easements, sec. 14, p. 656; Northwest Cities Gas Co. v. Western Fuel Co., 13 Wash. (2d) 75, 123 Pac. (2d) 771, 776. In the latter case it is

said: ''A user which is permissive in its inception cannot ripen into a prescriptive right, no matter how long it may continue, unless there has been a distinct and positive assertion by the dominant owner of a right hostile to the owner of the servient estate. See also State ex rel. Shorett v. Blue Ridge Club, 22 Wash. (2d) 487, 156 Pac. (2d) 667.

In Scheller v. Pierce County, 55 Wash. 298, 104 Pac. 277, 278, it was said, in quoting from Jones on Easements, section 282:

'' 'If the use of a way over one's land is shown to be permissive only, no right to use it is conferred, though the use may have continued for a century or any length of time. ''A different doctrine would have the tendency to destroy all neighborhood accommodation in the way of travel; for if it were once understood that a man, by allowing his neighbor to pass through his farm without objection, over the passway which he used himself, would thereby, after the lapse of 20 or 30 years, confer a right on him to require the passageway to be kept open for his benefit and enjoyment, a prohibition against all such travel would immediately ensue. To create the presumption of a grant of a right of way, the circumstances attending its use must be such as to make it appear that it was established for the benefit of the claimant, or that its use was accompanied by a claim of right, or by such acts as manifested an intention to enjoy it, without regard to the wishes of the owner of the land. The use must have been enjoyed under such circumstances as will indicate that it has been claimed as a right, and has not been regarded by the parties merely as a privilege, revocable at the pleasure of the owner of the soil.'' ' Jones on Easements, sec. 282.''

The record here shows that the road in question was used by ▮ the respondent and his predecessors in interest for their own purposes in farming the land involved. Under such circumstances the general rule is that the use of the road by another will generally be regarded as permissive where such

use does not injure or interfere with the owner's use. In 28 C. J. S., Easements, sec. 18, p. 668, the rule is stated thus:

"Where a landowner opens up a way on his own land for his own use and convenience, the mere use thereof by another, under circumstances which do not injure the road nor interfere with the owner's use of it, will not in the absence of circumstances indicating a claim of right be considered as adverse, and will not ripen into a prescriptive right no matter how long continued. Where a space is left open by the owner for his own convenience the presumption ordinarily is that the use of such space by another, even for his own purpose, is permissive. Nevertheless, the mere fact that a way has been established by the owner of the land for his own use does not of itself prevent a user of the way by another from becoming adverse, as by some act or circumstance showing a claim of an exclusive or peculiar right in claimant distinct from that of the general public.

"However, in order to acquire this adverse character knowledge must be brought home to the owner of the land that the user is claimed as of right. The requirement is not satisfied by keeping the road in repair for the use of both parties, or by constructing and maintaining bridges on it. It has also been held that the mere fact that a tenant of one claiming an easement in a right of way by adverse user had complained, on one occasion, that poles which had been piled on the way obstructed it, and that the agent of the owner removed the same, is not evidence of an assertion of right to use the way sufficient to ripen into title by adverse user." See supporting authorities cited.

In Howard v. Wright, 38 Nev. 25, 143 Pac. 1184, it is said: " * * * the law in this respect is well established that where the owner of land opens a road across it for his own use and keeps it open for his own use, the fact that he sees his neighbor, or other parties, also making use of it under circumstances that do not tend to injure the road or interfere with his own use of it, will not justify the inference that he is yielding to his

express claim of right, or that his neighbor is asserting any right.''

To the same effect is the case of Anthony v. Kennard Bldg. Co., 188 Mo. 704, 87 S. W. 921.

We think that the finding of the trial court that the use of the road by John Veltkamp was permissive until 1941, and that he never at any time prior to 1941 claimed the use thereof adversely or in hostility to the ownership thereof by James Veltkamp, or his devisees and successors in interest, is amply supported by the evidence. It follows that the conclusion to the effect that defendant has no right or easement to enter upon and travel upon or across plaintiff's lands is correct.

Appellant also assigns error in the conclusion that the proof fails to establish a public road or highway across plaintiff's land. It would seem that any contention that a public road had been established by a prescriptive use by the public is inconsistent with the claim of a private easement and right thereunder to use of the same road. In any event, we think the record falls far short of showing a public easement resulting from an adverse use by the public for the prescriptive period.

Appellant suggests the existence of a right of way of necessity across plaintiff's lands. Without discussing the evidence in this respect, it is apparent that other means of ingress and egress to and from his land are available, and that use of the road on plaintiff's land is a matter of convenience rather than of necessity.

Since we have held that the findings of the trial court are justified by the evidence, they will not be disturbed. Such findings support the conclusions of law.

The judgment is affirmed.

Mr. Chief Justice Lindquist and Associate Justices Morris, Adair, and Angstman concur.