No. 12145

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

WILFORD W. POEPPING and JOYCE M. POEPPING,
husband and wife,

Plaintiffs and Respondents,

-vs-

WAYNE NEIL and RUTH NEIL,
husband and wife,

Defendants and Appellants.

---

Appeal from: District Court of the First Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Gough, Booth, Shanahan and Johnson, Helena, Montana.
Ward A. Shanahan argued, Helena, Montana.

For Respondent:

Loble, Picotte, Loble, Pauly & Sternhagen, Helena,
Montana.
Gene Picotte argued, Helena, Montana.

---

Submitted: May 15, 1972

Decided: JUL 19 1972

Filed: JUL 19 1972

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment entered on findings of fact and conclusions of law by the district court of the first judicial district, Lewis and Clark County, the Honorable Nat Allen presiding. The judgment and a subsequent order were in favor of plaintiffs. Defendants appeal.

The issues on appeal are:

1) Did the district court err in concluding that plaintiffs had established a prescriptive right to use an access road and driveway which crosses the land of defendants?

2) If a prescriptive right was shown, did the district court, after "extinguishing" a driveway easement because of the actions of plaintiffs, err in failing to extinguish the "access road" easement because of the increased burdens created by the change in character of the use by plaintiffs?

3) If a prescriptive right was shown, did the district court err in failing to limit the use of the "access road" easement to those uses existing prior to March 1970?

Plaintiffs, respondents here, are man and wife and will be referred to as Poepping. Defendants, appellants here, are also man and wife and will be referred to as Neil.

Poepping and Neil are neighbors. Poepping commenced this action to enjoin the construction of a fence and erection of boundary signs, and to declare an access road and driveway easements by prescription.

The properties here involved are located adjacent to the "Canyon Creek Store" some sixteen miles north of Helena. Both properties had a common ownership until 1946. In 1946 Anderson, the owner, sold the Canyon Creek Store and five acres to one Wall, who in 1952 sold to Young, who in turn sold to Poepping on April 10, 1969. In 1950 Neil bought the ranch surrounding the store

property on three sides. So, what had been a common ownership was now split. The property line in contention runs in a north-south direction between the store building and a residence building, down the middle of a driveway running north and south. There were no reservations of easements.

A public road known as the Lincoln Road runs in an east-west direction and is contiguous to the southern edge of the Poepping property/the and Neil property. From that public road a somewhat "elliptical" access road comes off the public road to the north across the "borrow pit", then parallels the public road and rejoins the public road back across the "borrow pit". This access road is on both properties and was historically used by the single owner. The property line running north-south and the driveway between the buildings, previously mentioned, bisects or joins the "access road".

Poepping operated a country store and a postoffice. His patrons commonly used the "access road". Neil operated a farm and he used the "access road". Both parties used the "driveway" as well.

In November 1969 Neil had a survey made of his property to determine the boundary line between the parties. It was in 1969 that Poepping had purchased his property on a contract and was discussing improvements. In March 1970 Poepping began to build a cafe extension on the side of the Canyon Creek Store. This extension projected to the east into the driveway used by both parties, projected to within about twenty inches of the center line of the driveway, which was the property line. Neil protested and construction was stopped for a time and then started again. At this point, Neil put up marker signs and began to install steel fence posts on his property line, down the middle of the driveway. The driveway was hard packed but otherwise unimproved.

On May 1, 1970, Poepping brought an action claiming a prescriptive right and irreparable injury and obtained a temporary restraining order against Neil to stop the installation of the fence.

Neil answered by general denial and two counterclaims. He asserted, in effect, that Poepping had, by constructing the cafe building on the joint driveway, waived any claim to the driveway; and further, concerning the "access road", that such use was a permissive use, and since the use was being materially changed by a beer sale license and the new cafe construction, that such increased and changed usage was an attempt to change and enlarge any access or prescriptive right, if any there had been.

Issue was joined and testimony taken. We shall not discuss ancillary matters such as motions, contempt, and other things not relevant to the main issue. The trial judge found and treated the "access" road and the "driveway" as two separate and distinct matters. Both the "access" road and "driveway" are hardpacked areas bordered by grass but otherwise unimproved. As to the common driveway, the trial court found that although Poepping had established a prescriptive right to a driveway easement between the properties, he had forced a change in the manner and location of the easement such as to cause an abandonment by him in March 1970, when the cafe was built. (Because of this "abandonment" Neil chose to build the fence.)

As to the separated "access road", the trial court found that Poepping had established a prescriptive right or easement to use it and it was necessary for ingress and egress to the Poepping land, store, and United States postoffice which Poepping operated.

A supplementary order was made which spelled out the rights on the "access easement", granting access and parking rights

to both parties with fencing rights and even down to the detail of describing a "Do Not Block Driveway" sign.

Heretofore we set forth the issues; and subsequently we described the facts briefly to preface a discussion of what we consider the main issue. That is ---- whether a "prescriptive right" as distinguished from a "permissive right" was established to the access road?

First, the two properties derived from one ownership. No easements were reserved. The Poepping property is a store, a postoffice, and other buildings which has ample room for ingress and egress on the other side. Anderson, the single owner, severed the five acre piece when he sold to Wall in 1946. That the driveway and access road were jointly used is clear. Until the fall of 1969, no problem existed. At that time all indicia of permissive user were present.

But, what indicia of prescriptive or adverse user were present? The trial court found, as to the use of the access road, that there was "no open and notorious objections thereto until on or about April 29, 1970 * * *." This is not the rule. Rather, the rule is the opposite. In White v. Kamps, 119 Mont. 102, 114, 171 P.2d 343, this Court discussed prescriptive easements and stated that there must be a distinct and positive assertion of a right hostile to the rights of the owner and must be brought to the attention of the owner. O'Connor v. Brodie, 153 Mont. 129, 454 P.2d 920.

Here there is really no evidence or testimony of adverse use other than the joint use known to each owner and not objected to. There is testimony that succeeding owners of the store property orally understood they could use the access and driveway. This, however, is consistent with permissive use. We simply do not find in the record evidence to support a prescriptive easement. In this

case it is difficult to demonstrate the negative. Any prescriptive use, recognizing that a permissive use may ripen into a prescriptive right under some circumstances, is simply not shown here. It is as if a private sidewalk to a person's dwelling house which visitors and patrons even use for years suddenly becomes a prescriptive right in the public.

Poepping seems to recognize the difficulty of finding evidence to support the finding of prescriptive easement. A ground not urged before (counsel on appeal is different than at trial) is put forth. Poepping now urges an easement by virtue of section 67-1607, R.C.M. 1947, what may be termed an implied reservation or grant of an easement by necessity.

In Thisted v. Country Club Tower Corp., 146 Mont. 87, 102, 405 P.2d 432, this Court discussed section 67-1607, together with other statutes, and said:

> "We think certain Montana statutes, under the facts in this case, are controlling:
>
> "'13-722. <u>Necessary incidents implied.</u> All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded.'
>
> "'67-1607. <u>What easements pass with property.</u> A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.'
>
> "'13-721. <u>Reasonable stipulations--when applied.</u> Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention.'
>
> "'49-114. One who grants a thing is presumed to grant also whatever is essential to its use.'

"'49-121. That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due.'

"We are further of the opinion that under all the facts shown in evidence here and as heretofore referred to herein, an implied equitable servitude attached to the transfers of the apartments in question, requiring the use of the apartments for residential purposes only.

"'67-606. <u>Extent of servitudes.</u> The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired.'

"By reason of our statutes and what has been heretofore said, there can be implied reservations or implied grants of easement by necessity in Montana, and insofar as the holding in Simonson v. McDonald, 131 Mont. 494, 311 P.2d 982, states to the contrary we must observe that the language therein used was too broadly put and should have been limited in its application to the facts existent in that case. Under the facts and circumstances existing here that holding is expressly overruled. (See criticism of Simonson v. McDonald in Vol. 19, Montana Law Review, page 73.)"

The foregoing quote demonstrates how an implied easement may arise.

As to the driveway, Poepping did not rely on an implied easement existing. He built on it and the court found that it was abandoned. As to the access road, Poepping's brief states that the buildings occupy only a very tiny portion of his property. Poepping has ample room for ingress and egress. This simply is not a case where the facts indicate an "implied easement" nor did Poepping attempt to establish such.

Were we to develop the theory of an implied easement, we would necessarily have to discuss the material change in the use since the building of the cafe; but we do not deem this necessary here.

Poepping would also have us declare a "public easement", since people go to the store and postoffice by means of the access road. However, we fail to see how the public gets any right under the circumstances here.

We have examined the entire record and recognize that the trial court made a valient effort to attempt to settle a dispute between neighbors. Nevertheless, we fail to find evidence sufficient to uphold the findings and conclusions as to prescriptive rights, and thus reverse the judgment.

The cause is returned to the district court for entry of judgment for appellants.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 8 -