No. 13665

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

_____

JAMES C. TAYLOR,

Plaintiff and Respondent,

-vs-

CHARLES PETRANEK and MRS. CHARLES
PETRANEK, his wife, and GEORGE A.
PETRANEK and MRS. GEORGE A. PETRANEK,
his wife,

Defendant and Appellant.

_____

Appeal from: District Court of the Tenth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of record:

For Appellant:

Bradley Parrish argued, Lewistown, Montana

For Respondent:

Morrow, Nash and Sedivy, Bozeman, Montana
James Morrow argued, Bozeman, Montana

_____

Submitted: June 8, 1977

Decided: 

Filed:

_____
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants appeal from a decree quieting title in plaintiff to certain land in north central Fergus County and denying defendants either a public or private easement across plaintiff's ranch.

Plaintiff is James C. Taylor, the successor in interest to his father and brother who purchased the "Horse Ranch" southeast of Suffolk in Fergus County, Montana in 1946. Defendants are Charles and George A. Petranek and their respective wives; they own a ranch adjacent to plaintiff's on the north and east sides.

A road, known as the Suffolk-East Road, runs easterly from the town of Suffolk toward the Petranek ranch. The first six miles of this road is a dedicated county road. The next seven miles runs easterly along the top of a ridge, over a hill, down into Murphy's Coulee, across the coulee and through a school section where it splits. One fork joins a trail which leads south for about five miles to the "Horse Ranch" buildings; the other fork leads east to the Petranek ranch buildings, then becomes a trail leading south to the "Horse Ranch" buildings.

Initially, the "Horse Ranch" lands did not include any part of the Suffolk-East road. However, in the early 1940's, the Taylor family's predecessor in interest expanded the "Horse Ranch" holdings. Today the Suffolk-East road passes through a part of the "Horse Ranch" property.

In 1914 the Petraneks' father purchased the land upon which defendants' ranch buildings are now located. At that time the country between Suffolk and the Petranek ranch was occupied by homesteaders who forged trails across the countryside to reach Suffolk by the shortest possible routes. As the homesteaders' ranches were fenced in, a common practice developed among them to allow one another to cross the fenced lands when traveling to Suffolk.

-2-

Although many trails covered the countryside, the Suffolk-East road was the main route into Suffolk from that area.

By the mid-1920's most of the homesteaders' operations had failed. Their fences fell into disrepair and were eventually removed. For awhile, the country through which the Suffolk-East road passes became open range.

Then in 1930 defendant Charles Petranek and his father fenced in the west side of their property where it adjoins what is now the "Horse Ranch" property and installed a gate where the fence line crossed the Suffolk-East road. In 1936 Milton Butcher bought the property immediately west of the present day "Horse Ranch" and fenced in his property. After the Taylor family acquired the "Horse Ranch" in 1940, they fenced in their property and installed a gate at the point where the Suffolk-East road crosses from the Butcher property to the "Horse Ranch".

In 1952 the Taylors' gate was replaced by a cattle guard. In 1973, the Butchers' removed this cattle guard and the foreman of the "Horse Ranch" installed a gate. The "Horse Ranch" foreman locked this gate from July to October, 1972, and again in October, 1973. He offered keys to the Butchers and the Petraneks, but the Petraneks refused to accept one. The Petraneks persisted in cutting locks on this gate after its closing in 1973, claiming a right to use the Suffolk-East road where it crossed the "Horse Ranch". The present lawsuit followed.

Plaintiff Taylor filed a complaint seeking to quiet title to his lands under claim of ownership and denying any claim of interest in these lands by defendants or any of them. Defendants filed an amended answer in which they denied any claim of ownership in plaintiff's lands, but they asserted that the public, or in the alternative they as private individuals, had acquired an easement by prescription in the road which crossed plaintiff's property and

-3-

that this road could not be closed by a quiet title action.

Judge Nat Allen assumed jurisdiction and granted a preliminary injunction restraining defendants from going upon plaintiff's property during the pendency of the action.  Following trial by the court sitting without a jury, Judge Allen entered findings of fact, conclusions of law and a decree quieting title in plaintiff, denying defendants' claims of public or private easement by prescription in the roadway, and enjoined defendants from asserting any interest in plaintiff's property or any claim of right to use any roadway across it.  Defendants have appealed from this decree.

The issues on appeal can be summarized in this manner:

(1) The sufficiency of the evidence to establish a private road easement by prescription across plaintiff's land;

(2) The sufficiency of the evidence to establish a public road easement by prescription across plaintiff's land;

(3) Whether Fergus County is an indispensable party to defendants' claim of easement.

The legal principles governing defendants' attack on the sufficiency of the evidence to support the district court's findings are clear.  Rule 52(a), M.R.Civ.P., provides in pertinent part:

> " * * * Findings of fact shall not be set aside
> unless clearly erroneous, and due regard shall be
> given to the opportunity of the trial court to
> judge of the credibility of the witnesses * * *."

This Court's function on appeal is simply to determine whether there is substantial evidence to support the district court's findings and will not reverse them unless there is a clear preponderance of evidence against them.  Merritt v. Merritt, 165 Mont. 172, 526 P.2d 1375; Finley v. Rutherford, 151 Mont. 488, 444 P.2d 306.

The law on acquiring a public or private easement by prescription is equally clear:

> "To establish the existence of an easement by
> prescription, the party so claiming must show

-4-

open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period." Scott v. Weinheimer, 140 Mont. 554, 560, 374 P.2d 91; White v. Kamps, 119 Mont. 102, 171 P.2d 343.

The controversy between plaintiff and defendants in this case boils down to whether defendants' use of the road was adverse or permissive.

To be adverse, the use must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owner of the land. White v. Kamps, supra. If there has been use of an alleged easement for the full statutory period, unexplained, it will be presumed to be under a claim of right, and adverse, and will be sufficient to establish a title by prescription and to authorize the presumption of a grant. Scott v. Weinheimer, supra; Te Selle v. Storey, 133 Mont. 1, 319 P.2d 218; Glantz v. Gabel, 66 Mont. 134, 141, 212 P. 858. This presumption exists to overcome "' * * * the general infirmity of human nature, the difficulty of preserving the muniments of title * * * '" and to promote the public policy of supporting long and uninterrupted possessions. Glantz v. Gabel, supra.

Defendants rely heavily on this presumption. They argue that this Court in Te Selle substituted this presumption for "the tortured and burdensome definition of what is and what isn't adverse use contained in the White v. Kamps case". In our view, White sets out very clearly what the law on adverse and permissive use is, contrary to defendants' assertion. The presumption upon which defendants' rely, first adopted in Glantz, was not at issue in White.

Defendants contend that plaintiff has not overcome the presumption by adequately explaining defendants' use of plaintiff's land. Rebuttable presumptions may be overcome by other evidence,

-5-

direct or indirect. Section 93-1301-5, R.C.M. 1947; Lunceford v. Trenk, 163 Mont. 504, 518 P.2d 266; O'Connor v. Brodie, 153 Mont. 129, 454 P.2d 920. Here the record is replete with testimony from both plaintiff's and defendants' witnesses that the homesteaders who initially lived in the area developed common practice of allowing others to cross their lands to reach Suffolk. This evidence is sufficient to support a use permissive in its inception and not under a claim of right.

Although a use permissive in its inception may ripen into a prescriptive right, it cannot do so unless there is a later distinct and positive assertion of a right hostile to the owner, which must be brought to the attention of the owner, and the use continued for the full prescriptive period. White v. Kamps, supra; also, see Poepping v. Neil, 159 Mont. 488, 499 P.2d 319.

Here the evidence shows that when the Taylors purchased the "Horse Ranch" in 1946, they fenced in their property, installed gates, and posted "No Hunting" and "No Trespassing" signs. The record does not clearly reveal who the intermediate owners of that part of the present "Horse Ranch" crossed by the Suffolk-East road were. However, in our view, the record does reveal that defendants' first distinct and positive assertion of a hostile right to the rights of the owner which was brought to the attention of the owner was when Charles Petranek cut the locked gates of the "Horse Ranch" in October, 1973. The full statutory period to establish an easement by prescription did not elapse thereafter.

Defendants' claim that the general public had acquired an easement across the plaintiff's land fails for the same reason. Although defendants point out that hunters occasionally used the road, plaintiff's testimony that he considered the road a private road and his foreman's testimony of posting "No Hunting" and "No Trespassing" signs on the gates supports permissive rather than

adverse use. This Court recently held that use of a road for recreation, hunting or fishing in itself was not sufficient to raise a presumption of adverse use or claim of right. Harland v. Anderson, (1976) _____Mont._____, 548 P.2d 613, 33 St.Rep. 363. Additionally, this Court has considered gates which must be opened and closed by persons passing over the land as strong evidence of a mere license to the public to pass over the designated way. Kostbade v. Metier, 150 Mont. 139. 432 P.2d 382.

Defendants additionally challenge the district court's finding that there is no instrument in writing conveying right of way across plaintiff's land on file with the Fergus County clerk and recorder. The evidence does not support defendants' contention.

In summary we hold that there is substantial evidence supporting the district court's determination that neither the general public nor the defendants individually have acquired an easement by prescription across plaintiff's land.

In view of our holding against defendants on the first two issues, the third issue becomes immaterial as it would not change the result in this case.

The decree of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justices

Mr. Justice Daniel J. Shea did not participate in this Cause.

-7-