No. 82-222

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

LOWELL A. RATHBUN,

        Plaintiff and Appellant,

  -vs-

GARY G. ROBSON, GEORGE A. CALRSON
and ELEANOR L. CARLSON, et al.,

        Defendants and Respondents.

_____

Appeal from: District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Jon A. Oldenburg, Lewistown, Montana

    For Respondents:

        Lynaugh, Fitzgerald & Skaggs; William P. Fitzgerald,
Billings, Montana

_____

Submitted on Briefs: February 10, 1983

Decided: April 7, 1983

Filed: APR 7 - 1983

*Ethel M. Harrison*

_____
                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This case comes from the District Court of the Fourteenth Judicial District, County of Musselshell. Plaintiff commenced this action seeking a judgment declaring him to be the holder of an easement across property owned by defendants. At the trial court, and in this Court, two easement theories were presented; easement by prescription, and easement by necessity. The District Court held against plaintiff in both instances. Additionally, we are asked to decide whether the court erred in verbatim adoption, and by photographic reproduction, the defendant's findings of fact and conclusion of law.

Appellant is the owner of a tract of land described as the east ½ of the west ½ of section 34. The attached map shows appellant's property and the claimed easement route.

Appellant has held an interest in the land since 1957 when his mother, Mrs. Rathbun, transferred ownership to him and his brother. Since that time, appellant has become the sole owner. There are two routes to the property; a western access route over which appellant claims an easement, and an eastern route which is steep and seasonally impassable. Use of either route requires one to cross property owned by at least one of the respondents. In other words, appellant's property is land-locked.

The land was initially purchased from Musselshell County in 1934 by T.D. Cox. The purchase by Cox included the west ½ of the west ½ of section 34; however, in 1942 that portion was sold by Cox and was eventually transferred to respondents Jerry Carlson and Kathleen Beslanowitch. It is over this portion that appellant claims an easement by necessity.

From 1934 to 1946 Cox lived on section 34. In the 1930's he conducted farming and logging operations. During these years he used the western access route frequently. In 1946 he sold the land to Mrs. Rathbun, appellant's mother. She owned the land until 1957. During these eleven years the land was vacant. Her

visits to the property were characterized by the court as sporadic and intermittent.

Appellant has never lived on the property. Much of the time since 1957, appellant has resided out-of-state. He has visited the land on the average of once or twice a year, and there were years in which he would make no visit. These visits were made to "check the property." Appellant owns other nonadjoining land in the vicinity which is leased for agricultural purposes, however, concerning the land in section 34, neither appellant nor his lessee have used the land for any productive use.

This dispute arose in the late 1970's when a real estate agent on behalf of appellant went to view the property. The agent learned that appellant's title did not include an easement. The testimony indicates that appellant wished to subdivide and sell the parcels. The respondents did not agree with this proposed land use and made their feelings known. The respondent's position was that any access across their land was permissive, and there could be no access to any subdivision. However, the respondents also testified that if appellant wished to put the land to other productive uses, such as logging or mining or agricultural purposes, they would allow access.

To establish an easement by prescription the burden is on the moving party to show several elements. He or his predecessors in interest must have used the route openly, notoriously, exclusively, adversely, continuously and uninterrupted for the full statutory period. Scott v. Weinheimer (1962), 140 Mont. 554, 374 P.2d 91. Once the moving party establishes these elements adverse use is presumed and the burden is then on the owner to show that the use was permissive. O'Connor v. Brodie (1969), 153 Mont. 129, 454 P.2d 920; Glantz v. Gabel (1923), 66 Mont. 134, 212 P. 858. If the owner shows permissive use, no easement can be acquired since the theory of prescriptive easement is based on adverse use. Wilson v. Chestnut (1974), 164 Mont. 484, 525 P.2d 24.

The District Court concluded that use of the western access route from 1934 to the present time has been permissive, therefore any presumption of adverse use was effectively rebutted. We agree.

There was evidence to indicate permissive use beginning in 1934. Several witnesses testified concerning local customs that began in the homesteading days concerning access across another's land. There existed an understanding among landowners that permission was not required every time a person needed to cross his neighbor's land. Permission was automatic if the individual closed the gates and respected his neighbor's property.

> "'* * * A use of a neighbor's land based upon mere neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. Thus where the use of a way by a neighbor was by express or implied permission of the owner, it was held that the continuous use of the way by the neighbor was not adverse and did not ripen into a prescriptive right * * *'" Wilson v. Chestnut, 164 Mont. at 491, 525 P.2d at 27. (Citing 2 Thompson on Real Property (1961 Replacement), Easements, §345). See also Ewan v. Stenberg (1975), 168 Mont. 63, 541 P.2d 60.

Evidence of this local custom, without more, was sufficient to establish permissive use. In Taylor v. Petranek (1977), 173 Mont. 433, 438, 568 P.2d 120, 123, this Court stated:

> "Here the record is replete with testimony from both plaintiff's and defendant's witnesses that the homesteaders who initially lived in the area developed common practice of allowing others to cross their lands to reach Suffolk. This evidence is sufficient to support a use permissive in its inception and not under a claim of right."

Notwithstanding local custom, there was other evidence to show that use of the western access began and remained permissive. There were several instances of control exercised by respondents and their predecessors; the first occurred in 1934 when both forks of the western access at the Goulding Creek Road were locked by the Robsons. Apparently, the gates were left open and cattle got loose. There were two other gates established and maintained by respondents. On the map they are designated as g-1 and g-2. In the early 1960's J.W. Travis, who then owned the

west ½ of the west ½ of section 34 drove a post into the middle of g-2, with the intention of preventing further vehicular traffic. Also, in the 1960's George Carlson padlocked g-1 with a chain. He retained the only key. The gate has remained locked to the present time.

Although the presence of gates alone will not defeat a prescriptive easement, they are strong evidence indicating permissive use. Hayden & Hill v. Snowden & Walters (1978), 176 Mont. 169, 576 P.2d 1115. The evidence of local custom, coupled with the existence of gates, clearly support the trial court's conclusion that use of the western access has always been permissive.

Next, appellant claims that an easement by necessity exists over the west ½ of the west ½ of section 34. This Court has recently stated:

> "Generally, a way of necessity is defined as follows: '[w]here an owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers, a way of necessity exists over the remaining lands of the grantor.' (citations omitted) Similarly, a way of necessity is found when the owner of lands retains the inner portion conveying to another the balance, across which he must go for exit and access." Schmid v. McDowell (1982), ___ Mont. ___, ___, 649 P.2d 431, 433, 39 St.Rep. 1313, 1316.

Appellant bases his argument on the second part of the definition; where the owner retains an inner portion. In this case appellant's predecessor transferred the west ½ of the west ½ in 1942, retaining the inner portion, the east ½ of the west ½. Appellant's claim must fail for the same reason discussed in Schmid; the reason for allowing a way of necessity does not exist. The land over which the way of necessity is claimed has no access to a public road. In other words, even if appellant were granted a way of necessity across the west ½ of the west ½ there would be no benefit; "the basic reason for the creation of a way of necessity, namely, to permit communication with the outside world, is not present.'" Schmid, ___ ___ Mont. at ___ ___, 649

- 5 -

P.2d at 433, 39 St.Rep. at 1317. (Citing Daywalt v. Walker (1963), 217 Cal.App.2d 669, 31 Cal.Rptr. 899.)

Finally, appellant asserts error for the court's photographic reproduction and verbatim adoption of the respondent's proposed findings of fact and conclusions of law. While we disapprove of the practice, "[o]ur ultimate test . . . is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented." In Re Marriage of Jensen (1981), ___ Mont. ___, ___, 631 P.2d 700, 703, 38 St.Rep. 1109, 1113. They clearly met the test.

The trial court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice Daniel J. Shea, concurring:

I join the opinion of the majority but merely want to comment on the last issue, that of the trial court's reproducing the proposed findings and conclusions of the prevailing party and adopting them as its own. The judicial trial process is demeaned when the trial courts engage in these practices. It shows that the trial courts have given little or no thought to the decision making process other than to decide who wins.

Winning counsel can, of course, be proud that the trial court has adopted verbatim their proposed findings and conclusions. But losing counsel and their clients have a reasonable expectation that the trial court, before deciding the case, carefully considered their case. Verbatim parroting of proposed findings and conclusions can do nothing but deflate these expectations.

Justice

- 7 -



N

State Secondary Hwy S-48 (Goulding Creek Hwy)

Route of access

29
Gary

Robson

28

21

Majerus

g-1
g-2 →

M

32

Geo. Carlson

33

J. Carlson (Travis)

Rathbun

34

J. Carlson (formerly J. Travis)

T
T

6

5

4

3

Rathbun

Geo. Carlson

J.
(f
J.

Stephenson

Jorgenson

7

8

9

10

S-48 Hwy

R25E