No. 84-12

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

JEROME H. THOMAS, RUTH N. THOMAS,
D. GARY THOMAS, PHILLIP MARK THOMAS,
and LEE CRAFTON,

        Plaintiffs and Respondents,

  -vs-

EDWIN BARNUM,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Lake,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Warden, Christiansen, Johnson & Berg; Stephen C.
Berg, Kalispell, Montana

    For Respondents:

        Turnage & McNeil, John Mercer, Polson, Montana

---

          Submitted on Briefs:  April 12, 1984

                  Decided:  June 28, 1984

Filed:  JUN 28 1984

*Ethel M. Harrison*
—————————————————
             Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendant Edwin Barnum appeals from a judgment of the District Court of the Fourth Judicial District, Lake County, finding a prescriptive easement across his property in favor of plaintiffs, and enjoining him from obstructing plaintiffs' use of the easement. We affirm.

In dispute is the right to use without permission or obstruction a dirt and gravel road running north from the Lake Mary Ronan Highway through lands owned by plaintiffs Gary and Phillip Thomas and continuing through the property of Edwin Barnum. The road then enters property owned by Jerome and Ruth Thomas, and continues in a northerly direction through other lands owned by Phillip and Gary Thomas. The road then winds through a small section of land owned by Thomas Crafton, the father of Lee Crafton, and eventually terminates on property owned by the Glacier Park Company.

The testimony of witnesses at trial establishes the historical practices surrounding use of the road and the circumstances leading up to the dispute over its use. None of the parties disagree that the lands now owned by them were probably homesteaded around the turn of the century, and that the road in question was constructed about 1900 and has remained virtually unaltered since that time. According to plaintiffs' witness Bill Wilhelm, an eighty-three year old, lifetime resident of the area, all of the homesteaders probably built the road together. Wilhelm also testified that since its construction, the road has been used continuously and without permission by area landowners, who

are involved primarily in ranching and logging, to reach their properties, move cattle either to grazing or market, and ship logs to market. Hunters have also used the road for many years. Perhaps the most critical observation offered by Wilhelm was that the road was used continuously during the forty years that one Theodore Savall owned the Barnum property. According to Wilhelm, Savall never hampered the use of the road, and no one ever asked or needed permission to use the road during or after the period of Savall's ownership of the adjacent land. Wilhelm's testimony is supported in large part by the testimony of Jack Meuli, a local rancher, lifetime resident and nephew of Theodore Savall.

From trial testimony and the on-scene view of the premises by the trial judge, it is also clear that fences run along both sides of the road for most of the distance through the Barnum property. According to Wilhelm, Savall and Wilhelm's father may have installed the fence during the early 1900's. The only portion left unfenced was a southwest corner, but Barnum apparently fenced this at some time after he purchased the property in 1961. Some kind of gate was strung along the northern edge of the road, very close to the Barnum-Jerome Thomas property line. This "north gate" was probably installed by the Scotts, predecessors-in-interest to Barnum. Although none of the parties were certain when it was installed or for what purpose, Meuli testified that, to his knowledge, the gate had never been locked prior to 1977. At the very least, none of the plaintiffs or their witnesses regarded it as a bar to unrestricted use of the road.

The instant dispute began in the summer of 1977, when Barnum padlocked the north gate and obstructed the road with logs and other debris, actions which virtually curtailed access by the Thomases, Meuli and Crafton to their respective properties. Prior to this time, the Thomases had used the road for their Christmas tree business, and Meuli used it for moving cattle to and from pasture land leased from Jerome Thomas. Thomas sought legal assistance from the county attorney, who advised Barnum to remove the lock and permit access. Nevertheless, in September of that same year, Barnum again restricted access, this time by erecting another locked gate along the southern part of the road not far from his property line. This gate obstructed access by Thomas, Meuli and Lee Crafton, who was verbally threatened by Barnum and prevented from hauling materials to a cabin construction site on his father's land. Thomas again contacted the county attorney, who again spoke to Barnum about the access problem. In response, Barnum left a key to the south gate with Thomas, although Thomas testified at trial that he never accepted the key, and that Barnum had just "plunked it down on the windowsill" of Thomas' home. Meuli also received a key to the south gate, but Crafton apparently did not.

The plaintiffs continued to have trouble with Barnum, and eventually filed suit seeking declaration of a prescriptive easement in that portion of the road running through Barnum's land and an injunction against further obstruction of the road and harrassment of plaintiffs. A temporary restraining order against Barnum was issued shortly thereafter. A stipulation was then entered into

permitting access by plaintiffs during the course of litigation. This stipulation was made part of a court order allowing temporary access. Nevertheless, in apparent defiance of the order, Barnum barred or conditioned access by both Meuli and Crafton on at least three occasions.

The case came to trial in June, 1983. Barnum appeared as the only witness for the defense. He maintained that use of the road was subject to his permission, although he had no personal knowledge of practices concerning use of the road before he purchased the land in 1961. He testified that the south gate was constructed only to keep hunters from entering the property, but also claimed that Meuli ran too many cattle along the road, and that the cattle were "scattered" over the property. The District Court rejected Barnum's contentions and rendered judgment in favor of plaintiffs.

The sole issue on appeal is whether the District Court properly found that plaintiffs had acquired a prescriptive easement in that portion of the road running through Barnum's property.

The law on acquiring an easement by prescription was set forth clearly in Taylor v. Petranek (1977), 173 Mont. 433, 568 P.2d 120:

> "'To establish the existence of an easement by prescription, the party so claiming must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period.' Scott v. Weinheimer, 140 Mont. 554, 560, 374 P.2d 91; White v. Kamps, 119 Mont. 102, 171 P.2d 343. [The statutory period in Montana was originally set at ten years. Section 9015, R.C.M. 1935, In 1954, the period was reduced to five years. See section 70-19-401, MCA and 1954 Mont. Laws ch. 224.]

"  . . .

" To be adverse, the use must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owners of the land. White v. Kamps, supra. <u>If there has been use of an alleged easement for the full statutory period, unexplained, it will be presumed to be under a claim of right, and adverse, and will be sufficient to establish a title by presumption of a grant.</u> Scott v. Weinheimer, supra; Te Selle v. Storey, 133 Mont. 1, 319 P.2d 218; Glantz v. Gabel, 66 Mont. 134, 141, 212 P.2d 858. This presumption exists to overcome '" * * * the general infirmity of human nature, the difficulty of preserving the muniments of title * * * "' and to promote public policy of supporting long and uninterrupted possessions. Glantz v. Gable, supra [citing Ricard v. Williams (1822), 20 U.S. (7 Wheat.) 59, 109, 5 L.Ed. 398, 410.]" 173 Mont. at 437-38, 568 P.2d at 122. (Emphasis added.)

The presumption may be overcome by evidence that use is permissive and not under claim of right. <u>Taylor</u>, supra, 173 Mont. at 438, 568 P.2d at 123. See also State v. Cronin & Wilson (1978), 178 Mont. 481, 488, 587 P.2d 396, 400.

Assuming the proper legal standard is applied by the trial court, we evaluate the court's evidentiary findings under the substantial evidence test. "This Court's function on appeal is simply to determine whether there is substantial evidence to support the district court's findings . . . [W]e will not reverse them unless there is a clear preponderance of evidence against them." <u>Taylor</u>, supra, 173 Mont. at 437, 568 P.2d at 122 (citations omitted). Due regard is given the opportunity of the district court to judge the credibility of witnesses, Rule 52(a), M.R.Civ.P., and resolve conflicts or inconsistencies in testimony, Bauer v. Cook (1979), 182 Mont. 221, 225-26,

-6-

596 P.2d 200, 203.

The testimony of Thomas, Meuli and Wilhelm supports the trial court's finding that use of the road was open, notorious, exclusive, adverse, continuous and uninterrupted for all the years leading up to the current dispute. It was up to Barnum to establish that use was purely permissive. The trial court was not convinced of the validity of his claims, and we find no error in the court's judgment. Barnum had no personal knowledge of the area or uses of the road prior to 1961, other than the knowledge possessed by men like Wilhelm. Wilhelm's testimony confirmed the plaintiffs' assertion that permission to use the road by area residents was never sought and, more importantly, was unnecessary. Indeed, from 1961 to 1977, Barnum personally acquiesced in use of the road by area residents who believed they could travel it under a claim of right. Although Barnum insists that Thomas had asked permission to use the road in his Christmas tree business, Thomas indicated that he had once asked permission to cut trees on Barnum's property, not permission to use the road.

Barnum offered no evidence to establish permissive use other than his uncorroborated assertions. Nevertheless, Barnum argues that the testimony of Thomas, Meuli and Wilhelm actually supports his theory that, historically, use of the road was a matter of neighborly cooperation and implied consent of the landowner since the time of the early homesteaders. Where there is evidence of such a custom or an understanding to cross one's land or use a road thereon, we have held that use was permissive and could not ripen into a prescriptive easement. See, e.g., Rathbun v. Robson

-7-

(Mont. 1983), 661 P.2d 850, 852, 40 St.Rep. 475, 477; Ewan v. Stenberg (1975), 168 Mont. 63, 67, 541 P.2d 60, 63; Wilson v. Chestnut (1974), 164 Mont. 484, 491, 525 P.2d 24, 27. Under the direction of leading questions propounded by Barnum's attorney, plaintiff Thomas and the other witnesses agreed with counsel that concepts such as "custom" and "understanding" described the historical use practices. Barnum relies on these answers to rebut the presumption supporting a prescriptive easement.

It is clear that, in answering defense counsel's questions, Thomas, Meuli and Wilhelm did not necessarily appreciate the subtle distinctions involved when describing the nature of use. The trial court, however, obviously understood what was happening and looked to the complete record of witness testimony regarding use before giving credence only to the answers given under cross-examination. Wilhelm, whose recollections of the history behind use of the road were the most detailed, testified that all of the homesteaders constructed the road around 1900. Savall and his successor-in-interest acquiesced in the use of the road by neighbors and others, all of whom regarded use of the road as under claim of right for many years. Thomas' and Meuli's observations corroborate the crucial fact that permission was something never considered by users over the years. Under the circumstances, any prescriptive easement was already in existence as a matter of law before 1961, the year Barnum purchased the land. He therefore purchased the land subject to the easement. Scott v. Weinheimer (1962), 140 Mont. 554, 561, 374 P.2d 91, 95. He cannot now extinguish the easement by a belated assertion of ownership.

The presence of the old north gate along the road is of no consequence. While it is true that the presence of a gate which must be opened and closed can be "strong evidence" of a mere license to use a road, see Kostbade v. Metier (1967), 150 Mont. 139, 145, 432 P.2d 382, 386, evidence of adverse use of the road will prevail. Here, as in Kostbade, the gate was never locked, and was not regarded as a hindrance or obstruction by plaintiffs, their predecessors-in-interest, or the plaintiffs' witnesses. Indeed, the absence of another gate on the southern edge of the property prior to Barnum's construction of the south gate permits an inference that use was not to be restricted.

We note further that the District Court was not convinced of Barnum's credibility as a witness. Barnum testified that Lake County authorities never maintained the road, yet on rebuttal Thomas and Wilhelm indicated that county crews had worked the road up to the north gate for many years. Similarly, Barnum claimed that cattle would stray onto his land from the road, yet the trial judge observed that the road was flanked on either side by steep hillside and fences, making it unlikely that cattle would stray. Barnum offered no explanation of these discrepancies in his testimony.

In summary, we find substantial evidence in the record to support the District Court's finding of a prescriptive easement. The judgment is affirmed.

_____
Justice

We concur:

_Frank X. Haswell_
Chief Justice

_[signature]_

_John C. Sheehy_

_Daniel J. Shea_
Justices