JUSTICE GRAY
specially concurring.
I concur in that portion of the majority opinion addressing the water right. I concur in the result reached by the maj ority with regard to the prescriptive easement in the ditch.
My analysis of certain testimony differs somewhat from that of the majority. The majority characterizes the testimony of Berna Martin-son, a predecessor of the Galbraiths, as showing that “the Mildenbergers’ use was never permissive.” I read Ms. Martinson’s testimony differently. It does not appear to me that either her testimony or any other testimony or evidence establishes whether the use was permissive or nonpermissive at its inception. Indeed, Ms. Martinson’s recollections regarding the ditch begin more than twenty-five years after the initial use of the ditch by the Mildenbergers’ predecessors.
Ms. Martinson’s testimony does suffice to meet the “adverse” showing required, however. She testified that the “rights” of the Mildenbergers’ predecessors to use the ditch were recognized at least as early as the mid-1950s, the time of her earliest firm recollection of the ditch. As this Court has stated:
“To be adverse, the use [of the alleged easement] must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner ... ; such claim [of right] must be known to, and acquiesced in by, the owner. ...”
Taylor v. Petranek (1977), 173 Mont. 433, 437, 568 P.2d 120, 122. Thus, while we do not have a single distinct and positive assertion of a claim of right to use the ditch, Ms. Martinson’s testimony indicates that a claim of right was known to exist, and acquiesced in, at least as early as 1955. This testimony provides sufficient evidence to support the District Court’s finding that the use of the ditch was “adverse.”