No. 96-630

# IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

WILLIAM H. RETTIG and
PATRICIA A. RETTIG,

        Plaintiffs and Appellants,

   v.

STEVE P. KALLEVIG and
GAYLE L. KALLEVIG,

        Defendants and Respondents.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                 In and for the County of Carbon,
                 The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

               Renee L. Coppock, Crowley, Haughey, Hanson, Toole &
               Dietrich, Billings, Montana

        For Respondents:

               P. Bruce Harper, Harper Law Firm, Billings, Montana

FILED

Submitted on Briefs: January 23, 1997

Decided: April 10, 1997

Filed:

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellants William H. Rettig and Patricia A. Rettig (Rettigs) appeal from the findings of fact, conclusions of law, and judgment entered by the Thirteenth Judicial District Court, Carbon County, determining that Rettigs had not established a prescriptive easement over real property owned by Steve P. Kallevig and Gayle L. Kallevig (Kallevigs).

We affirm.

We review whether the District Court erred in concluding that Rettigs did not establish a prescriptive easement over Kallevigs' property because Rettigs' use was permissive.

## BACKGROUND

Rettigs and Kallevigs own adjoining parcels of real property in Carbon County, Montana. Rettigs purchased their parcel (the Rettig property) in 1983 from Jim Englert, and became neighbors with Kallevigs in 1994 when Kallevigs purchased their parcel (the Kallevig property) from Mrs. Kallevig's father, Edward DeRudder. Englert and DeRudder were neighbors for nearly fifteen years, and their history is an important part of this case.

The western border of the Kallevig property abuts a paved highway that runs in a north-south direction, passing through the nearby towns of Fromberg and Bridger. The Rettig property is to the east of the Kallevig property and does not abut the highway. Traditionally, the Rettig property was connected to the paved highway by one of two routes: via the Skunk Creek Road, a county road that runs along the northern border of the Rettig

property, and via the Temple Road, a track across the Rettig property that eventually connects with the Skunk Creek Road.

In the early 1960s, DeRudder dug a silage pit on his property (later, the Kallevig property) and built a road connecting the silage pit and the paved highway. DeRudder erected a fence and gate at the junction of the silage pit road and the paved highway. With DeRudder's express permission, Englert extended the road from the silage pit in an easterly direction over DeRudder's property to his, Englert's, property (later, the Rettig property). Englert graveled the road and installed a drainage pipe. After the road was constructed, Englert moved his mailbox from the junction of the highway and Skunk Creek Road to the junction of the highway and the silage pit road. DeRudder did not object to these actions.

This silage pit road provided Englert a more convenient access to the paved highway than did the Skunk Creek Road or the Temple Road. DeRudder allowed Englert to use the silage pit road, subject to his clearly expressed authority to revoke the permission should certain circumstances arise which would prompt him to do so. Englert understood that his use of the silage pit road was permissive.

In the early 1980s, Englert informed DeRudder of his intention of selling his property. DeRudder advised Englert that all prospective buyers be instructed that the use of the silage pit road was not a right but a privilege, based on DeRudder's grant of permission.

Englert testified that when Rettigs, as prospective buyers, came to inspect the property, he informed them of the permissive nature of the use of the silage pit road. Rettigs

denied that this statement was made. Englert explained during his testimony at trial that Rettigs asserted their belief that they could establish a right to use the road, and that this statement was made in response to his warning that the use of the road was permissive. A real estate agent, Bill Huyser, testified that he was present during this conversation, that he heard the statements described by Englert, and that he himself informed Rettigs that the use of the silage pit road was permissive. The court found Englert's testimony credible.

Rettigs purchased the property in 1983 and immediately began using the silage pit road as the primary access to their property. Rettigs often saw DeRudder as they drove the road, and they usually exchanged smiles and waves in passing. Rettigs were never informed directly by DeRudder that their use of the road was permissive.

While DeRudder maintained the section of the road from the highway to the silage pit, Rettigs maintained the section of the road from the silage pit to their property. Rettigs' graveled the road, replaced the drainage pipe previously installed by Englert with a culvert, and put in a cattle guard. On particularly snowy days when the silage pit road was impassable without four-wheel drive, Rettigs parked their car on the road. Rettigs also placed their mailbox at the junction of the highway and the silage pit road. DeRudder did not object to any of these actions.

In 1985, Rettigs plowed under the Temple Road, placed a sprinkler system on the property, and converted the plowed under road to agricultural use. However, Rettigs did not remove the entry gates, the entry arch, or the road apron where their property joined the

Skunk Creek Road. DeRudder testified that he had no knowledge that Rettigs had plowed under the Temple Road.

In 1994, DeRudder sold his property to his daughter and son-in-law, Kallevigs. Kallevigs informed Rettigs that they could no longer use the silage pit road, and in January, 1995, closed and locked a gate across the roadway at the point at which it connects to the paved highway. Rettigs filed suit seeking a judgment declaring that they held a prescriptive easement across Kallevigs' property. After a non-jury trial, the court entered judgment for Kallevigs, concluding that a prescriptive easement had not been established and that use of the silage pit road was merely permissive. Rettigs appeal from this judgment.

## STANDARDS OF REVIEW

In the recent case of Rafanelli v. Dale (Mont. 1996), 924 P.2d 242, 53 St.Rep. 746, where we considered whether the district court erred in concluding that a prescriptive easement had been established, we explained the applicable standards of review:

> We review a district court's findings of fact to determine whether they are clearly erroneous, giving "due regard ... to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), M.R.Civ.P. In determining whether a court's findings of fact are clearly erroneous, we apply a three-part test:
>
> > First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of evidence has not been misapprehended, the Court may still find that "[A] finding

5

is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the [C]ourt with the definite and firm conviction that a mistake has been committed."

*Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287 (citations omitted). We review conclusions of law to determine whether the district court's interpretation of the law is correct. *Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Found., Inc.* (1993), 259 Mont. 279, 283, 856 P.2d 525, 527.

Rafanelli, 924 P.2d at 245. We also explained that

[i]t is within the province of the trier of fact to weigh the evidence and assess the credibility of witnesses and we will not second-guess those determinations. Moreover, we will uphold a district court's findings when there is substantial evidence to support them even when there is also evidence supporting contrary findings.

Rafanelli, 924 P.2d at 245-46 (citations omitted).

## DISCUSSION

Did the District Court err in concluding that Rettigs did not establish a prescriptive easement over Kallevigs' property because Rettigs' use was permissive?

A prescriptive easement is created by operation of law in Montana. Swandal Ranch Co. v. Hunt (1996), 276 Mont. 229, 233, 915 P.2d 840, 843. The party claiming the easement must establish "open, notorious, exclusive, adverse, continuous and uninterrupted use" of the claimed easement for the statutory five-year period. Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Found., Inc. (1993), 259 Mont. 279, 283, 856 P.2d 525, 527

6

(citations omitted). However, because the theory of prescription is based on adverse use, a landowner may rebut a prescriptive easement claim by establishing that the use of the claimed easement was permissive. Rathbun v. Robson (1983), 203 Mont. 319, 322, 661 P.2d 850, 852.

That Rettigs' use of the silage pit road was open, notorious, exclusive, continuous and uninterrupted is not disputed; prior to Kallevigs erecting the locked gate in 1995, Rettigs had used, with DeRudder's knowledge, the silage pit road for some eleven years. However, the District Court concluded that Rettigs' use of the silage pit road was permissive and therefore had not ripened into a prescriptive easement. Rettigs attack this conclusion on several grounds.

First, Rettigs claim that the court's conclusion was erroneous because DeRudder never informed them that their use of the road was permissive. Second, Rettigs claim that the court's conclusion was erroneous because, assuming Englert and Huyser informed them of the permissive use of the road (which Rettigs deny), the only way such information would have the effect of a grant of permission from DeRudder himself would be if DeRudder had issued written authority to Englert and Huyser to grant permission on his behalf. *See* § 28-2-903(1)(d), MCA (contract involving interest in real property must be in writing). There was no evidence that such a relationship was created. Third, Rettigs claim the court's conclusion was erroneous because Englert's permissive use of the road was not automatically transferred to Rettigs upon their purchase of Englert's property. Rather, Rettigs argue that the nature of

their use of the road must be evaluated upon its own merits, and that such an evaluation clearly reveals that their use was adverse to DeRudder's ownership for the statutory period.

Kallevigs contend, essentially, that the fact that DeRudder did not directly, or, indirectly through Englert or Huyser, grant Rettigs permission to use the road is not dispositive here. Similarly, Kallevigs contend that Rettigs' "transferred permission" argument is inapplicable. Rather, Kallevigs argue that the initial, undisputedly permissive nature of the road continued uninterrupted until that permission was revoked in 1995. In that respect, Kallevigs argue that the permissive nature of the use of the road was not dependent on DeRudder affirmatively granting Rettigs permission to use the road. Moreover, Kallevigs contend that DeRudder was neither prompted nor required to take any action to uphold the permissive nature of the use of the road, because Rettigs did not use the road in a substantially different manner than did Englert before them. The court's findings and conclusions reflect Kallevigs' argument, and are supported by substantial credible evidence.

The trial testimony of Englert and DeRudder clearly establishes that the use of the silage pit road was permissive from the moment construction of the road was completed. The record also shows that Englert, in building, maintaining, and using the road, graveled the road, installed a drainage pipe, moved his mailbox to the junction of the silage pit road and the paved highway, and used the road as his principal access to his residence. These activities manifested the use of the road permitted by DeRudder.

8

When Rettigs purchased the property, they used the silage pit road in much the same manner as did Englert. They used the road as their primary access to their residence. They replaced the drainage pipe with a culvert. They graveled the road. They placed their mailbox at the junction of the silage pit road and the paved highway. While Rettigs in some specific ways used the road differently than did Englert, as in installing a cattle guard and parking their car on the road on particularly snowy days, Rettigs' overall use of the roadway was not inconsistent with the use initially permitted by DeRudder. In addition, Rettigs' plowing under of the Temple Road, an event which Rettigs claim indicated their intent to use the silage pit road as their own, was done, according to testimony which the court found credible, without DeRudder's knowledge. Finally, in light of the nature of Rettigs' use of the road, consistent with the use initially permitted by DeRudder, Rettigs' statement to Englert during purchase negotiations in the early 1980s that they believed they could establish a prescriptive easement (a statement apparently relayed to DeRudder) stands alone and ineffective as an indication to DeRudder of Rettigs' intentions. Therefore, DeRudder was effectively without notice that Rettigs considered their use of the road adverse to his ownership rights, and was under no compulsion, legal or otherwise, to assert his right of ownership and clarify that use of the road was permissive only. "[A] landowner should not be forced to give up title to property without notice of the alleged adverse claim and the opportunity to know that his title is in jeopardy." Amerimont, Inc. v. Gannett (Mont. 1996), 924 P.2d 1326, 1333, 53 St.Rep. 929, 933 (citations omitted).

In addition, transferred permission is not involved here; rather, the permissive use initially contemplated by DeRudder and Englert continued without substantial change, modification, or hesitation until 1995. Rettigs correctly assert that this Court has held that permissive use is not transferable. Luoma v. Donohoe (1978), 179 Mont. 359, 363, 588 P.2d 523, 525. In Luoma, defendant argued that even if use of a trail over plaintiff's property had been permissive in the past, the permissive nature of the use of the trail did not extend to him because permissive use is not transferrable. In explaining the non-transferability of permissive use, we stated that one who has received permission to use a road may not transfer a "limited personal right or license to use the road to any other person or persons." Luoma, 588 P.2d at 525 (citing Cope v. Cope (1971), 158 Mont. 388, 493 P.2d 336). However, the rule regarding non-transferability of permissive use does not work to limit the landowner's ability to permit whomever he wishes to use his land. A landowner may, as here, determine that any owner of a particular parcel of property be allowed to use a roadway over his property; the identity of the permitted user may change without running afoul of the rule regarding non-transferability of permissive use.

Rettigs contend, however, that the permissive use originally contemplated by DeRudder did not extend to them because they were never informed by DeRudder, either directly or indirectly, that the use of the silage pit road was permissive. This contention is without merit. First, periodic, express grants of permission are not required to maintain the permissive character of the use of a road. "[I]f a use begins as a permissive use it is

presumed to continue as such." White v. Kamps (1946), 119 Mont. 102, 114, 171 P.2d 343, 349. Moreover, the relevant facts here, that use of the road by Englert and Rettigs was essentially the same, that DeRudder did not object to either Englert's or Rettigs' use, and that DeRudder intended that the use be permissive only, support a conclusion that Rettigs' use of the road was pursuant to DeRudder's implied permission. "[W]here the use of a way by a neighbor was by express or implied permission of the owner ... continuous use of the way by the neighbor [is] not adverse and [does] not ripen into a prescriptive right." Tanner v. Dream Island (1996), 275 Mont. 414, 425, 913 P.2d 641, 648 (citations omitted). Further, the court found credible the testimony that Englert and Huyser informed Rettigs of the permissive nature of the use of the road. While Englert's and Huyser's information did not, by itself, create a permissive use situation, it nevertheless indicated to Rettigs DeRudder's characterization of the use of the road. And, as we have discussed, Rettigs' use of the road was not inconsistent with DeRudder's characterization.

Our review of the record leaves us with the firm conviction that the District Court's findings of fact are supported by evidence and are not clearly erroneous, and that the court's conclusions of law are correct. Based upon the witness testimony and other evidence before it, the court concluded that Rettigs' use of the silage pit road was a continuation of the permissive use initially established by DeRudder and Englert. Based upon this conclusion, the court determined that Rettigs had not established a prescriptive easement. The court did not err.

Affirmed.

_____
                                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
              Justices

12

Justice James C. Nelson dissenting.

I respectfully dissent from the Court's opinion in this case. I would hold that the Rettigs' use of the road was adverse; that the Kallevigs failed in their burden to establish permissive use; and, thus, that the Rettigs did have a prescriptive easement over the Kallevigs' property.

As the Court's opinion correctly states, a claim to an easement by prescription may be defeated by the landowner demonstrating that the claimant's use was with the landowner's permission. Rathbun v. Robson (1983), 203 Mont. 319, 322, 661 P.2d 850, 852. While the Court also correctly states that permissive use is not transferrable, Luoma v. Donohoe (1978), 179 Mont. 359, 363, 588 P.2d 523, 525, it then ignores that principle and the record in this case to reach the incorrect conclusion that "the permissive use initially contemplated by DeRudder and Englert continued without substantial change, modification, or hesitation until 1995."

Contrary to this assertion, a substantial change did occur in that Englert sold his property to the Rettigs in 1983. Although Englert's use of the road was with the express permission of DeRudder, the testimony at trial showed that the Rettigs and DeRudder never discussed the use of the road that crossed DeRudder's property. Englert and Huyser testified that when the Rettigs, as prospective buyers, came to inspect Englert's property, they informed the Rettigs that the easement was permissive. This, however, did not make the Rettigs' use of the road permissive. As we have already stated, Englert could not give

13

someone else the right to permissively use DeRudder's property; permission is not transferrable. Luoma, 588 P.2d at 525. Moreover, even if DeRudder made Englert his agent to advise the Rettigs of DeRudder's intent to make the Rettigs' use permissive (and there is absolutely no evidence that he did), the agency failed because it was not in writing. See §§ 28-2-903, 28-10-201 and 28-10-203, MCA; Palin v. Gebert Logging, Inc. (1986), 220 Mont. 405, 407, 716 P.2d 200, 202.

Regardless of Englert's use of the roadway being permissive, such use could not, as a matter of law, nor was it in this case, as a matter of fact, transferred to the Rettigs. Rather, the Rettigs' claim of prescriptive use of the roadway must stand or fall on its own. We must look strictly at the conduct between the Rettigs and DeRudder to determine whether the Rettigs established a prescriptive use or whether that claim was defeated by DeRudder's grant of permission.

In this regard, it is undisputed that DeRudder did not expressly grant or deny permission for the Rettigs to use the roadway. Rather, DeRudder, at the most, merely acquiesced in the Rettigs' use of the road. "Implied acquiescence is not the same as permission." Cremer v. Cremer Rodeo Land and Livestock Co. (1981), 192 Mont. 208, 211, 627 P.2d 1199, 1201. Acquiescence means "passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user. 'Permission' means more than mere acquiescence; it denotes the grant of a permission in fact or a license." Cremer, 627 P.2d at 1201 (citations

omitted). Clearly, DeRudder, by failing to assert his rights, merely acquiesced in the Rettigs' use of the road and did not give the necessary "permission in fact or a license" that would be sufficient to defeat the Rettigs' claim of adverse use.

Moreover, if Englert's testimony was credible, as the District Court found and as Kallevigs argue, then as early as 1983, when the Rettigs negotiated for the purchase of their property, Englert put DeRudder on notice that the Rettigs claimed a prescriptive use of the road. Once that happened, DeRudder was obligated to take some affirmative action to advise or to show the Rettigs' that their claim of adverse use was incorrect and that they were privileged to use the road over his property only with his permission. See Cremer, 627 P.2d at 1201. Without citing any supporting authority, the Court incorrectly holds that DeRudder "was effectively without notice that Rettigs considered their use of the road adverse to his ownership rights, and was under no compulsion, legal or otherwise, to assert his right of ownership and clarify that use of the road was permissive only." That is not the record in this case, nor is it the law.

The Rettigs were under no duty to communicate to DeRudder that they were using the road under a claim of right, adverse to DeRudder. Warnack v. Coneen Family Trust (1996), 53 St.Rep. 812, 813, 923 P.2d 1087, 1089 (citing Tanner v. Dream Island, Inc. (1996), 275 Mont. 414, 425, 913 P.2d 641, 648).

> [A]lthough the plaintiffs bear the burden of establishing that their claim is known to and acquiesced in by the owner, they need not specifically notify the servient landowners that they are using the easement under a claim of right.

15

Warnack, 923 P.2d at 1089. Moreover, the Rettigs' open, notorious, and hostile acts (daily use of the road as the sole means of ingress to and egress from their property; treating the road as if it were their own by installing a cattle guard and a culvert and spreading gravel on the road; and never seeking DeRudder's permission to use the road) were inconsistent with DeRudder's title to the road and were more than sufficient to constitute notice to DeRudder. Lemont Land Corp. v. Rogers (1994), 269 Mont. 180, 185, 887 P.2d 724, 728.

The Court holds, again without citing any supporting authority, that a landowner may determine "that any owner of a particular parcel of property be allowed to use a roadway over his property; the identity of the permitted user may change without running afoul of the rule regarding non-transferability of permissive use." This statement is in direct contradiction to the rule that permissive use is not transferrable and is incorrect.

Moreover, the Court states that "periodic, express grants of permission are not required to maintain the permissive character of the use of a road." For this proposition the Court cites White v. Kamps (1946), 119 Mont. 102, 171 P.2d 343, wherein this Court held that a use is presumed to be permissive if it began as such. While it may be true that, as to the person given permission by the landowner to use the landowner's property, permission does not have to be re-granted, that is not the case here. DeRudder's grant of permission was to Englert only; DeRudder never granted permission to the Rettigs. The Court's statement, thus, implies that Englert's permissive use was transferred to the Rettigs, contradictory to our later holding in Luoma.

16

The record establishes that the Rettigs proved all of the elements of a prescriptive easement. In fact, the Court's opinion concedes that "Rettigs' use of the silage pit road was open, notorious, exclusive, continuous and uninterrupted . . . with DeRudder's knowledge . . . for some eleven years." What is not proven, however, is that DeRudder ever defeated the Rettigs' claim of prescription by showing that he had granted *them* permissive use of the road over his property. While the Kallevigs may have proved permissive use as between DeRudder and Englert, that permissive use, as a matter of law, did not transfer to the Rettigs, and the Kallevigs wholly failed in their burden to show any permissive use as between the Rettigs and DeRudder. Accordingly, I would hold that the District Court erred in finding that the Rettigs did not have a prescriptive easement over the road on the Kallevigs' property.

I would reverse.

_____
Justice

Justice Karla M. Gray concurs in the foregoing dissent.

_____
Justice

17