No. 02-480

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 188

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff and Respondent,

    v.

GEORGE HALL d/b/a ROCON HOUSE MOVING,

        Defendant and Cross-Appellant,

    and

LAURA KELLY and JOHN KELLY,

        Defendants, Cross-Claim Plaintiffs, and Appellants.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DV 00-0381,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Steven A. Kelly, Attorney at Law, Billings, Montana

    For Respondent:

        Timothy J. Whalen, Whalen & Whalen, Billings, Montana

Submitted on Briefs:  March 20, 2003

Decided:  July 17, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 In February 2000, the Appellants, Laura and John Kelly, entered into a contract with the Cross-Appellant, George Hall doing business as Rocon House Moving, to move four fourplex residential units in Billings, Montana. During and after the move, the units sustained damage. The Kellys filed negligence and breach of contract claims against Hall. Hall counterclaimed against the Kellys for breach of contract. Following a non-jury trial, the Thirteenth Judicial District Court, Yellowstone County, concluded that the Kellys failed to establish that Hall negligently moved the units. Further, the court determined that both parties breached the House Moving Agreement and, as such, neither party could recover against the other. Both parties appeal. We affirm in part and reverse in part.

¶2 The parties present the following issues on appeal:

¶3 1. Did the District Court err when it concluded that the Kellys failed to establish their negligence claim against Hall?

¶4 2. Did the District Court err when it concluded that each party breached the House Moving Agreement and, therefore, neither party could recover under their respective breach of contract claims?

BACKGROUND

¶5 In January 2000, Laura and John Kelly purchased four fourplex residential units (designated 706A, 706B, 718A, and 718B) for investment purposes. The units stood on a site where Walmart intended to build a new store. Thus, the Kellys purchased the units with the knowledge that they would have to be relocated. Toward this end, in February 2000, the

2

Kellys contracted with O'Neil House Moving of Williston, North Dakota, to move the units. The Kellys experienced difficulty securing a temporary storage location which resulted in termination of the arrangement with O'Neil.

¶6 Thereafter, George Hall of Rocon House Moving approached the Kellys about moving the units. The Kellys agreed to pay Rocon $9500 to move each unit. In turn, Hall agreed to obtain $75,000 cargo insurance on each unit in the event the units sustained damage in the move. The agreement required Rocon to move the units twice, first to a temporary storage site and then to permanent foundations.

¶7 On March 10, 2000, Rocon proceeded to move the structures. During the move, the trailer transporting 706B dropped into a water or sewer line trench causing considerable damage to the unit. A wrecker had to pull the trailer and 706B out of the predicament. Further, the Kellys assert that the units hit trees, telephone poles, streetlights, delineator posts, and mailboxes during the move, damaging the siding, gutters, soffits, and shingles on 706A and 706B. Ultimately, Rocon transported the four units to a temporary site north of Billings.

¶8 After the move to the temporary site, the Kellys sought remuneration for the damaged structures. At that point, the Kellys discovered that Hall procured cargo insurance for only two of the units, 706A and 706B. The Kellys submitted claims to the insurance carrier, Scottsdale Insurance Company, with respect to 706A and 706B. Scottsdale denied the claims and on April 19, 2000, filed a Complaint for Declaratory Judgment against Hall and the Kellys. Therein, Scottsdale sought to void the insurance coverage or reduce its exposure

3

because Hall allegedly misrepresented the value of the units and failed to disclose, or concealed, other pertinent information.

¶9     On May 24, 2000, the Kellys filed an Answer to the Complaint and, simultaneously, filed a cross-claim against Hall.  The cross-claim sought breach of contract damages for Hall's failure to procure cargo insurance.  Further, the Kellys alleged that Hall negligently damaged the structures in preparation for and during the move.  On May 31, 2000, Hall filed a counterclaim against the Kellys.  Hall sought breach of contract damages for the Kellys' failure to secure permanent foundations for the units.  Hall alleged that this delay unnecessarily encumbered his equipment.  Hall sought payment of the outstanding contract price and damages at the rate of $100 a day for each day that his equipment remained with the units.

¶10    On April 1, 2002, the case proceeded to a non-jury trial.  As of the time of trial, some two years after the move, the Kellys had yet to secure permanent foundations for the units.  Rocon left its moving equipment with the units for a considerable period of time but removed it just prior to trial.  At trial, the Kellys asserted that Rocon further damaged the units when it removed its equipment from the temporary location prior to trial.

¶11    On May 20, 2002, the District Court entered its Findings of Fact, Conclusions of Law, and Order.  The court found that Hall did not misrepresent or conceal information in procuring the cargo insurance.  The court found that unit 706A sustained damage in the move totaling $34,209.  The court found that 706B, valued at $75,000, sustained irreparable damage in the move.  Accordingly, the court entered judgment in favor of the Kellys and

4

against Scottsdale in the amount of $109,209.

¶12 The court concluded that the Kellys failed to establish that Hall negligently moved the units. Further, the court found that both Hall and the Kellys breached the House Moving Agreement–Hall failed to obtain cargo insurance on all of the units and the Kellys failed to secure permanent foundations for the units. Therefore, the court determined "that based upon the breaches of Hall and the Kellys, the parties are not able to collect damages from each other." On June 17, 2002, the Kellys filed a notice of appeal from the portion of the District Court's judgment which denied recovery against Hall. On June 27, 2002, Hall filed a notice of appeal from the portion of the District Court's judgment which precluded his recovery against the Kellys. Scottsdale is not a party to this appeal.

STANDARD OF REVIEW

¶13 We review a district court's findings of fact to determine whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. In determining whether a court's findings of fact are clearly erroneous, we apply a three-part test. First, we review the record to determine if the findings are supported by substantial evidence. *Rettig v. Kallevig* (1997), 282 Mont. 189, 193, 936 P.2d 807, 809. Second, if the findings are supported by substantial evidence, we determine whether the court misapprehended the effect of the evidence. *Rettig*, 282 Mont. at 193, 936 P.2d at 809. Third, if substantial evidence exists and the trial court has not misapprehended the effect of the evidence, we may still adjudge a finding clearly erroneous when, although there is evidence to support it, the record leaves this Court with a definite and firm conviction that a mistake has been

5

committed. *Rettig*, 282 Mont. at 193, 936 P.2d at 809. We review conclusions of law to determine whether the district court's interpretation of the law is correct. *Rettig*, 282 Mont. at 193, 936 P.2d at 809.

DISCUSSION

ISSUE ONE

¶14 Did the District Court err when it concluded that the Kellys failed to establish their negligence claim against Hall?

¶15 The Kellys argue that the District Court's findings of fact with regard to the negligence claim are not supported by substantial evidence. Conversely, the Kellys assert that substantial evidence supports their contention that the units were damaged due to Hall's negligence.

¶16 The court entered few findings with respect to the negligence claim. The court simply found:

> 33. This Court finds that the Kellys and Scottsdale failed to establish that Rocon was negligent when the buildings were moved. Testimony was given about the procedure used by Rocon. It is uncontested that Rocon used a different procedure than O'Neil and that Rocon removed bracing that was installed by Rocon and Kelly. However, Kellys have not established that Rocon's procedure was the cause of the damages to the fourplexes.
>
> 34. Mark Coppe, inspection officer for O'Neil, stated in his deposition that the problem was that the c-channel steel was not strong enough for the two story fourplexes which lacked a floor. However, Mr. Coppe also stated that many house movers would use the very same procedure that Rocon used and that he was not present when the fourplexes were moved.

¶17 As the foregoing findings demonstrate, the court cites solely the testimony of Mark

6

Coppe in support of its negligence determination. However, Mark Coppe's testimony does not stand for the proposition cited by the District Court.

¶18 Mark Coppe conceded that he was not present when Hall moved the fourplexes. However, Mark Coppe examined the units after the move and developed an opinion as to the cause of the damage based on his twenty-five years of experience in the field. He opined that Hall's moving technique subjected the units to the damage:

> The problem was using channel iron steel instead of steel beams.
>
> . . . .
>
> [W]hen you have a two-story building like that, you have to consider the weight of the second story . . . . [I]f that had been like a garage type of structure with the peg walls, you could get by with that type of system of just using channel iron, but when you have a building of that size, you have to use steel beams going both directions to support the weight of all of the walls which are supporting the weight of the upper level.
>
> . . . .
>
> I don't think channel beams could get the job done, period.

¶19 Throughout his testimony, Mark Coppe never wavered from this position. He did indicate that Hall's technique would have been sufficient to move smaller structures but he never stated that "many house movers would use the very same procedure that Rocon used" under similar circumstances. Perhaps the District Court confused Mark Coppe's testimony with that of John Richards, discussed in greater detail below.

¶20 The Kellys presented additional evidence to support Mark Coppe's opinion. Brunno Coppe, a housemover from O'Neil with approximately twenty-nine years of experience,

7

testified that he would use Hall's moving method on smaller buildings. Brunno Coppe testified that he "didn't think . . . it was a good idea to use it on this building being as big as it was and heavy as it was." Brunno Coppe stated that the units were more likely to suffer damage as a result of Hall's moving technique as compared to that recommended by Mark Coppe.

¶21 Jim Schilke, a structural engineer, testified that the units were "doomed to be damaged" due to Hall's moving technique. Schilke stated that "the channel iron or the cross members were undersized significantly, sometimes [by] . . . a factor of 2.0 times. In other words, they were overstressed by a factor of about two times what they should be able to take."

¶22 John Richards, a foreman with O'Neil who has moved approximately 2000 houses, testified that he has used Hall's technique on "small buildings like garages and some smaller single stories on occasion." However, he had "never once" considered Hall's technique for the Kellys' units because they were "too big a structure for that kind of [technique] . . . . [I]t would be a risk in traveling . . . ." Richards speculated that other movers would undertake the risky procedure employed by Hall. However, in light of the testimony presented, such a procedure appears inappropriate to accomplish the task at hand. Mere speculation that other movers might undertake similarly risky action should not militate against the standard of care evidence presented by the Kellys.

¶23 Aside from Richards' speculative statement, the District Court's Findings of Fact, Conclusions of Law, and Order references no evidence to rebut the Kellys' negligence claim.

8

Additionally, the court did not address damage which Hall concedes occurred in transit (hitting a post and the like) and upon cribbing the units for removal of Hall's equipment. Thus, we cannot conclude that the District Court's negligence findings are supported by substantial evidence. Accordingly, we hold that the District Court erred when it found that the Kellys failed to establish Hall's negligence.

## ISSUE TWO

¶24 Did the District Court err when it concluded that each party breached the House Moving Agreement and, therefore, neither party could recover under their respective breach of contract claims?

¶25 The District Court found that "the parties agreed that George Hall would obtain cargo insurance on all four of the fourplexes." The court also implicitly found that, pursuant to the House Moving Agreement, the Kellys were required to provide permanent foundations for the units shortly after the initial move. The court determined that Hall secured insurance for only two of the units, in violation of the agreement. Further, it found that "[a]s of the time of trial, the Kellys had yet to obtain a site and build a foundation to place the fourplexes." Based on these findings, the court concluded that "both Rocon and the Kellys breached the House Moving Agreement" and, therefore, "the parties are not able to collect damages from each other."

¶26 Hall argues that the House Moving Agreement required the Kellys to furnish the requisite cargo insurance. Therefore, according to Hall, he did not breach the agreement and is entitled to recover from the Kellys based on their failure to provide permanent

9

foundations.

¶27 The Agreed Facts in the Pretrial Order and Hall's testimony belie Hall's position on appeal. The original House Moving Agreement does contain a boilerplate provision which obligates the property owner to procure the necessary cargo insurance. However, the Agreed Facts in the Pretrial Order state that "Hall agreed to purchase the [cargo] insurance." Further, Hall testified that he told the Kellys he would procure the cargo insurance on all four units. He stated that he failed to comply with the obligation because "I run out of money and–plainly run out of money. I didn't have the money to do it."

¶28 There is sufficient evidence in the record to support the District Court's finding that Hall agreed to procure cargo insurance on all four units. By his own admission, Hall failed to perform this obligation. Therefore, the District Court did not err when it concluded that Hall breached the House Moving Agreement and, as such, could not recover under the agreement.

¶29 As for the Kellys, they concede that the House Moving Agreement required them to provide permanent foundations for the units within sixty days of the initial move. However, they argue that the procurement of cargo insurance was a condition precedent to their performance under the contract. The Kellys argue that they "did not have to provide Hall with a final foundation until he purchased cargo insurance." Since Hall never acquired the insurance, the Kellys contend the court erred when it found that they breached the agreement.

¶30 Section 28-1-403, MCA, defines a condition precedent as "one which is to be

performed before some right dependent thereon accrues or some act dependent thereon is performed." For years, this Court has recognized that conditions precedent are not favored in the law, must be strictly construed, and must be plainly expressed. *See Atlantic Pacific Oil Co. v. Gas Development Co.* (1937), 105 Mont. 1, 17-19, 69 P.2d 750, 755-56; *First Nat. Bank of White Sulphur Springs v. Stoyanoff* (1960), 137 Mont. 20, 29, 349 P.2d 1016, 1021 (Angstman, J., dissenting). Further, "[i]t is a principle of contract law that a mere stipulation or covenant in a contract will not be construed as a condition precedent, particularly where a forfeiture would result and where it appears a condition precedent, if desired, could have been provided for by express agreement." *Palmquist v. Allardyce Petroleum Corp.* (1974), 164 Mont. 178, 180, 520 P.2d 783, 784.

¶31 The House Moving Agreement contains no language indicating the agreement was contingent upon Hall's procurement of cargo insurance. Further, the Kellys cite no legal authority or compelling evidence in support of their contention that Hall's failure to secure cargo insurance excused their performance. The Kellys simply offer the bare assertion that "[o]btaining the cargo insurance was a condition precedent to the Kellys providing Hall with a final foundation." Based on the presumption against conditions precedent and inconclusive evidence, we hold that the District Court did not err when it found that the Kellys breached the House Moving Agreement and, therefore, could not recover breach of contract damages against Hall.

¶32 Affirmed in part, reversed in part, and remanded for a trial on causation and damages consistent with this Opinion.

11

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ STEWART E. STADLER
District Court Judge Stewart E. Stadler
sitting in for Justice Warner